# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

GREGORY SHAWN BACHE,      )
                            )
          Petitioner,          )
                            )
v.                               )          Civil Action No. 3:17CV520–HEH
                            )
HAROLD W. CLARKE,       )
                            )
          Respondent.      )

## MEMORANDUM OPINION
### (Granting Respondent's Motion to Dismiss)

Gregory Shawn Bache, a Virginia inmate proceeding with counsel, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1) challenging his convictions in the Circuit Court of Caroline County, Virginia ("Circuit Court"). Respondent has moved to dismiss. (ECF No. 6.) Bache did not file a response. For the reasons that follow, the Motion to Dismiss will be granted.

## I.     PROCEDURAL HISTORY

Following a bench trial, the Circuit Court convicted Bache of six counts of rape and five counts of aggravated sexual battery. (ECF No. 7–1, at 1–2.)[1] At his sentencing hearing, the Circuit Court also accepted Bache's guilty plea and convicted Bache of an additional offense of escape from custody. (*Id.* at 3.) The Circuit Court sentenced Bache to one hundred and ten years of incarceration, with seventy-five years suspended,

---

[1] Bache was also charged with five counts of taking indecent liberties with child by person in custodial or supervisory relationship, two counts of carnal knowledge, and one additional count of rape, but these charges were either *nolle prossed* or dismissed. (*See* § 2254 Pet. 2.)

resulting in an active sentence of thirty-five years. (*Id.* at 2–4.)[2] Bache appealed, arguing

that insufficient evidence existed to convict him of the six rape counts and the five

aggravated sexual battery counts. (ECF No. 7–2, at 1.)

The Court of Appeals of Virginia aptly summarized the evidence of Bache's guilt

as follows:

> Appellant challenges the sufficiency of the evidence to support his six convictions of rape and five convictions of aggravated sexual battery. "On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" *Archer v. Commonwealth*, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).
>
> The victim was born on October 17, 1991. She was four years old when her mother married appellant. The victim lived with her mother, appellant, and their two children in Caroline County.
>
> The victim testified that on the night she returned home from a trip to California in August 2005, appellant entered her bedroom, pushed her down on a blue blanket, and removed her clothing. Appellant then forced the victim to have sexual intercourse with him. During the incident, the victim was struggling and crying, and she told appellant to stop. Afterward, appellant gathered his own clothing, as well as the victim's, and washed it. The victim put the blue blanket in her closet. Appellant later said he would hurt the victim, her mother, and her siblings if she told anyone about what had happened. The victim was afraid, so she did not tell anyone about what had happened.
>
> The victim testified that the appellant forced her to submit to sexual intercourse on a weekly basis while she was fourteen years old. The sexual activity with appellant continued through the victim's fifteenth, sixteenth, and seventeenth birthdays. After the victim turned eighteen, appellant forced her to have sexual intercourse with him even more frequently.
>
> In April 2010, the victim confided in a friend that appellant was forcing her to have sex with him. The victim subsequently told her boyfriend as well. Both the victim's friend and her boyfriend urged the victim to run away or to report appellant's conduct.

---

[2] Bache also received a suspended one-year sentence for the escape from custody conviction. Bache does not appear to challenge that conviction in the instant § 2254 Petition.

During the night of July 14, 2010, appellant entered the victim's bedroom, forced her down, and had sexual intercourse with her. On the subsequent afternoon the victim contacted the police and reported that appellant had raped her. When the police went to appellant's workplace and arrested him, he got into his vehicle and tried to get away from the officers.

When the victim was fifteen, appellant took the victim to a medical clinic for a pregnancy test. Appellant filled out the associated paperwork with his own last name even though that was not the victim's true name. Appellant also used his own social security number rather than the victim's. The victim had not had sexual intercourse with anyone but appellant. Appellant later had the victim call the clinic for the results of the test and report it to him, but not her mother.

The Commonwealth introduced evidence that from 2005 to 2010 appellant tried to control the victim's social relationships and closely monitored the victim's activities on the internet. He also required her to send him text messages at specific times of the day.

After appellant's arrest, the police seized a blue blanket from the victim's bedroom closet. She testified it was the same blanket upon which appellant had forced her to have sex for the first time in 2005. Genetic material in a seminal stain on the blanket was consistent with appellant's DNA profile. Condoms and a pregnancy test also were found in the victim's bedroom. The victim testified that appellant had purchased the items.

When the police interviewed appellant after his arrest, he was advised that the victim was at the hospital having a physical examination to recover evidence. Appellant subsequently admitted that he had a sexual relationship with the victim, but it had not started until after she turned eighteen. In an interview on July 19, 2010, however, appellant said his sexual relationship with the victim had begun before her eighteenth birthday.

Testifying in his own behalf, appellant denied raping the victim in August 2005. He further denied having any sexual contact with her until after she turned eighteen. He stated that he had never forced her to have sex with him, but they had engaged in consensual sexual intercourse beginning in March 2010.

Appellant contends the evidence was insufficient to sustain his convictions because the victim's testimony was inconsistent and was contrary to human experience. A conviction of a crime involving sexual assault may depend upon the "uncorroborated testimony of a prosecutrix if her evidence is credible, and the guilt of the accused is believed by the [fact finder] beyond a reasonable doubt." *Willis & Bell v. Commonwealth*, 218 Va. 560, 563, 238 S.E.2d 811, 812 (1977). "Because sexual offenses are

typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished." *Garland v. Commonwealth*, 8 Va. App. 189, 192, 379 S.E.2d 146, 147 (1989). Nonetheless, the victim's testimony must not be so contrary to human experience as to render it unworthy of belief. *See Willis*, 218 Va. at 563, 238 S.E.2d at 813.

The trial court credited the victim's testimony, and rejected appellant's claim that his sexual intercourse with the victim was consensual and only after she became an adult. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Marable v. Commonwealth*, 27 Va. App. 505, 509–10, 500 S.E.2d 233, 235 (1998).

The Commonwealth's evidence proved that appellant forced the victim to have sexual intercourse with him in 2005, when she was thirteen years old. The victim did not tell anyone about appellant's actions because she was fearful for the safety of herself and her family. In the ensuing years, appellant forced the victim to have intercourse with him on a weekly basis. Appellant continued to have forcible sexual intercourse with the victim after she turned eighteen, including just prior to his arrest in July 2010. Eventually, the victim confided in friends about appellant's actions. Appellant attempted to flee when the police tried to take him into custody for the offenses. Appellant's semen was found on the blue blanket in the victim's closet, the same blanket upon which he had first forced the victim to submit to intercourse.

Considering all the facts and circumstances, we find the victim's testimony was not so contrary to human experience as to render it unworthy of belief and that the evidence was sufficient to prove beyond a reasonable doubt that appellant was guilty of rape and aggravated sexual battery.

(*Id.* at 1–4 (alterations in original).)

The Court of Appeals of Virginia denied the petition for appeal (*id.* at 1), a three-judge panel again denied the petition for appeal (*id.* at 6), and the Supreme Court of Virginia subsequently denied the petition for appeal (ECF No. 7–3, at 1). Bache, by the same counsel representing him in the instant § 2254 Petition, filed a petition for writ of habeas corpus in the Circuit Court raising, *inter alia*, the same claim he raises here. (ECF No. 7–4.) After an evidentiary hearing, the Circuit Court denied his petition for a writ of

habeas corpus. (ECF No. 7–6, at 1–3; ECF No. 7–7, at 2.) The Supreme Court of Virginia refused the petition for appeal. (ECF No. 7–8, at 1.)

Bache then filed this instant § 2254 Petition. Bache demands relief upon the ground that his counsel allegedly rendered ineffective assistance when he failed to provide Bache with adequate advice regarding a plea offer. (§ 2254 Pet. 16.) Bache claims that, had counsel provided the necessary advice, Bache would have accepted the plea and would have received a ten-year sentence. (*Id.* ("Claim A").)

## II.   APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS REVIEW

To obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") further circumscribes this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether

that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## III.  ANALYSIS

### A.  Ineffective Assistance of Counsel Standard

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient, and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, a convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

The two-part *Strickland* standard applies to claims arising out of the plea-bargaining process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *see Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). "During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler*, 566 U.S. at 162 (quoting *McMann v.*

*Richardson*, 397 U.S. 759, 771 (1970)). Generally, claims of ineffective assistance of counsel during the plea process fall into three categories. First, "the [complete] failure of a defense attorney to timely inform his client of a plea offer constitutes unreasonable professional assistance." *United States v. Brannon*, 48 F. App'x 51, 53 (4th Cir. 2002) (citing *United States v. Blaylock*, 20 F.3d 1458, 1465–66 (9th Cir. 1994)); *see Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003). Second, a defense attorney's inaccurate advice or misinformation in conveying a plea offer may constitute deficient assistance. *Brannon*, 48 F. App'x at 53 (citing *Paters v. United States*, 159 F.3d 1043, 1047–48 (7th Cir. 1998); *see United States v. Merritt*, 102 F. App'x 303, 307–08 (4th Cir. 2004); *Wolford v. United States*, 722 F. Supp. 2d 664, 688 (E.D. Va. 2010) (concluding that counsel was deficient where he "misled [the petitioner] into believing that she had some possibility of prevailing at trial on the basis of several non-viable defenses"). Third, incomplete advice in conveying a plea also may provide a basis for a claim of ineffective assistance of counsel. *See Wolford*, 722 F. Supp. 2d at 689 (concluding that "counsel's incorrect and incomplete legal advice to [the petitioner] during the plea negotiation process was objectively unreasonable" (citing *Strickland*, 466 U.S. at 688); *see also United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) ("[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer." (citing *Hill*, 474 U.S. at 56–57; *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948))).

In the plea context, to demonstrate prejudice, Bache must also show that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Merzbacher v. Shearin*, 706 F.3d 356, 363 (4th Cir. 2013) (quoting *Hill*, 474

U.S. at 59). Courts generally reject a defendant's self-serving statement that, but for counsel's misadvice, the defendant would have accepted the plea offer, unless such an assertion is coupled with some objective evidence tending to support the defendant's claim that he relied on counsel's erroneous advice. *See Merritt*, 102 F. App'x at 307–08 (citing *Gordon*, 156 F.3d at 381); *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991); *see also Fields v. Atty. Gen. of Md.*, 956 F.2d 1290, 1298 n. 19 (4th Cir. 1992). In this regard, counsel's "gross misadvice" about the maximum potential sentence the defendant would be exposed to if he rejected the plea offer can serve as objective evidence to support a defendant's claim of prejudice. *Merritt*, 102 F. App'x at 307.

## B.     State Habeas

### 1.     Bache's Claim

In his state habeas petition, Bache argued

> The Petitioner was advised of the 10-year plea offer on the evening of the first day of trial. Even though the complaining witness ("AM") had testified for the Commonwealth at that point and had been impeached to some extent, the likelihood of a conviction on one or more charges remained very high. Not only had the Petitioner admitted having an on-going sexual relationship with AM, who was his step-daughter, there also was DNA located on a blue blanket which was presented as alleged proof of sex with AM when she was as young as 13 years old.
>
> . . . The defense theory of the case was that the Petitioner started having sex with AM after she turned 18 years old, and the Petitioner was intending to take the stand on the second day of trial to testify in his own defense. However, according to police, the Petitioner had admitted [to] having sex with AM before she turned 18 . . . .
>
> . . . .
>
> Under the circumstances, the evidence was stacked against the Petitioner, and the Petitioner's only real chance would be for the fact-finder to accept the Petitioner's testimony and reject the testimony of AM and bulk of the Commonwealth's evidence. Without any substantial proof of AM's motive to fabricate the charges, the reality was that a conviction (on

some, if not all, the charges) was likely. Without a doubt, one or two convictions alone could greatly exceed 10 years. Thus, comparatively, an agreed-upon sentence of 10 years would [be] a much better option.

The most serious charges, six counts of rape, could result in a life sentence (without the possibility of parole) for each and every one. Even if the fact-finder found the sexual relationship to be consensual, counsel failed to explain that Petitioner was still facing up to 25 years or more on the indecent liberties charges alone. . . .

Overall, given the circumstances, there was virtually no chance that the Petitioner would be acquitted of all of the charges. The Petitioner did not understand all [of] these factors, and counsel failed to explain and discuss them. Counsel did not provide the opportunity for the Petitioner to ask questions about the plea offer and the likelihood of walking out of court a completely free man. Additionally, the Petitioner did not get the opportunity to accept the plea offer as counsel failed to address it on the morning of the second day of trial.

(ECF No. 7–4, at 5–8.) Bache argued that if he had been made aware of these facts by

counsel, he would have accepted the plea offer. (*Id.* at 7.)

## 2. Testimony from the Evidentiary Hearing

The Circuit Court held an evidentiary hearing on this claim, necessitated by the

fact that counsel refused to provide an affidavit to the Commonwealth. The evidentiary

hearing took place five years after Bache's trial concluded, Bache indicated that he made

no contemporaneous notes about his discussions with counsel, and admitted his memory

of the events was not perfect. (Jan. 29, 2016 Tr. 43–44, ECF No. 7–5.)

### a. Bache's Testimony

Bache testified that he first learned of the opportunity to plead guilty at the end of

the first day of trial. (*Id.* at 17–18.) According to Bache, counsel, Vincent L. Robertson,

Esq., told Bache that the Commonwealth had presented a plea offer of ten years of

imprisonment and forty years suspended, that he did not know all the details then, but

9

that he would see Bache later that night at the jail. (*Id.* at 18.) Bache indicated that they had no additional discussion about whether Bache should accept the plea offer at that time. (*Id.*) Bache met with Robertson a second time that evening around 10:00 p.m. at the Pamunkey Regional Jail. (*Id.* at 19–20.) Bache indicated that they met for around 40 to 45 minutes and discussed '[h]ow the day went." (*Id.* at 20.) Bache explained that counsel indicated that he believed the first day of trial had gone well for the defense and that he believed that the evidence had demonstrated the existence of a "consensual relationship" as a defense to the charges. (*Id.* at 21.)

Bache indicated that he and Robertson did not really discuss the pros and cons of accepting the guilty plea because they were both confident that "we were going to win at the trial." (*Id.* at 22.) Before he left, Robertson indicated that they would meet again in the morning. (*Id.* at 22–23.) Bache spoke with his family later that night by telephone and told them that he and Robertson would talk about the plea in the morning. (*Id.* at 22.) Bache testified that he never indicated to Robertson whether he wanted to accept or reject the plea offer (*Id.* at 24), and when Robertson left that night, his status of accepting the offer was "left at think it over and we didn't get to discuss it any further after that." (*Id.* at 36.) Bache indicated that Robertson gave him no guidance as to what he should consider, in terms of whether or not to accept the plea offer. (*Id.* at 37.) Bache testified that Robertson failed to provide him with an indication of how much time he could serve if he was convicted of the various charges. (*Id.*)

Bache testified that Robertson never came to see him on the morning before trial and that the two never discussed whether or not he should accept or reject the plea offer

10

that morning. (*Id.* at 38–39.) Bache testified that he also never told Robertson that he needed to talk to him about the plea. (*Id.* at 38.) Bache explained that he did not ask Robertson about the plea offer because: "I didn't have the opportunity. Court seemed like it was being rushed. It started up quickly, and I sat at the table and we just proceeded with the rest of the trial for that day. I didn't want to interrupt or be rude. I didn't know how to go about it after Court started up." (*Id.*) Bache also testified that he never told Robertson that he wanted to take the plea offer. (*Id.* at 40.)

Bache indicated that he was employed as a correctional officer and it was important to avoid a felony conviction to any of the charges because such a conviction would have ended his career. (*Id.* at 41–42.) Thus, Bache's primary goal in proceeding to trial was "[b]eing found not guilty." (*Id.*)

b.      **Robertson's Testimony**

Robertson, in contrast, provided much more fulsome testimony about the events surrounding the plea offer. Robertson testified that he was an experienced criminal defense attorney (*Id.* at 47), and in his estimation, there were "challenges that we had to overcome" that shaped defense strategy, including the existence of DNA evidence demonstrating a sexual relationship (*Id.* at 48–49), as well as recorded phone calls of Bache admitting that such a relationship existed. (*Id.* at 51, 53.) Robertson explained that in light of the unavoidable evidence establishing that a sexual relationship between Bache and his step-daughter existed, he adopted a trial strategy aimed at demonstrating that the relationship was consensual in nature based, in part, on a series of text messages between Bache and the victim. (*Id.* at 52–55.) Robertson indicated that he dealt with the

issue of consent not being a complete legal defense to the indecent liberties charges by "explain[ing] to [Bache] that barring some miracle he was not going to walk away from this case unscathed. But we would put on the best defense that we had available to reduce the number of charges that he was exposed to." (*Id*. at 55.) Robertson testified that the sentence for a "consensual sexual relationship was much less than it would be for forcible sodomy or the other charges [Bache] was facing." (*Id*.) Robertson indicated that he talked about seeking a plea deal from the Commonwealth "early on and [Bache] didn't seem interested in it." (*Id*. at 58.)

In stark contrast to Bache's testimony, Robertson described the first day of trial as "a catastrophe" due the admission of damaging evidence. (*Id*. at 59–60.) At the conclusion of the first day of trial, Robertson approached the Commonwealth for a plea offer even though Bache had not asked for one because he believed it "prudent . . . to at least give [Bache] an opportunity to make a decision about whether he wants to go forward with this case." (*Id*. at 60.) Robertson testified that the plea offer from the Commonwealth "wasn't as specific as Mr. Bache said. The offer was ten years with a whole lot of hang time. But that before it could be made [the Commonwealth] had to confirm that with the family. So at that time there was no actual offer." (*Id*.) Robertson clarified that the offer was "ten years straight" with no suspended time on those ten years. (*Id*. at 61.) Robertson communicated to Bache immediately after trial that a "potential offer . . . was on the table." (*Id*.) When asked whether he communicated "the advisability of accepting an offer" at that juncture, Robertson stated "Oh, absolutely." (*Id*. at 62.) Robertson explained to Bache that it was not yet a firm offer, but that the

12

Commonwealth was "looking at offering . . . ten years to serve and that's ten years straight to serve." (*Id.*) Robertson testified that he explained to Bache it was his choice whether or not to plead guilty, but indicated that "we didn't have the best day today" and if the remainder of the trial was similar, "this is not going to be a good outcome." (*Id.* at 63.) Robertson counseled Bache to think about the potential offer. (*Id.*) Robertson indicated that Bache did not seem interested in the plea offer, "[b]ecause he was under the impression that he could win his case." (*Id.* at 84.)

Later that evening, the Commonwealth confirmed that a plea offer would be extended but did not specify which offenses Bache would be required to plead guilty to. (*Id.* at 61.) Rather, "if [Bache] accepted it then we could work-out the details of what the plea would be and what charges he would take, and that was essentially it." (*Id.*) Robertson first conveyed to Bache's family, "that we have an offer and it's a good offer," but his family indicated that they wanted Robertson to proceed with trial. (*Id.* at 65.) Robertson testified that he was positive that he had not told Bache or his family that things were going well after the first day of trial. (*Id.* at 72.) Robertson then conveyed the offer to Bache and they "talked about the offer. We talked about the time that he was exposed to if all of the charges were to be found guilty." (*Id.* at 65.) Bache asked Robertson if he had spoken to his family about the plea offer, and Robertson indicated that whatever his family said was "not important because this is ultimately your decision." (*Id.*) Bache asked Robertson's advice, and Robertson stated: "I can advise you of what the evidence is and we can talk about whether this a good plea or not . . . . But at the end of the day you're looking at serving ten years which is considerably less

13

than what you would be serving if you're found [guilty] on these charges." (*Id.* at 66.)

Robertson indicated that he "remember[ed] this like it was yesterday, even though it was

five years ago. [Bache] said, 'I can not see myself pleading guilty to something that I did

not do.'" (*Id.*) Robertson then attempted to flesh out what Bache believed that he had

not done, and to further explain the evidence to him. (*Id.* at 66–67.) Bache believed that

he "didn't rape her," so Robertson explained the elements of rape and the evidence

against him. (*Id.* at 67.) Bache persisted in learning what his family thought he should

do, and even though Robertson "didn't feel like it was the right advice to give him," he

finally told Bache that his family wanted Robertson to continue with trial. (*Id.*) Bache

then indicated: "That's what I want to do." (*Id.*) Robertson again counseled that it was

Bache's decision alone to make, but Bache indicated that he was absolutely sure that he

wanted to continue with trial, so Robertson and Bache spent the next couple of hours

prepping Bache's trial testimony. (*Id.*) Robertson testified that he spoke with Bache

about the plea offer for "at least 90 minutes to a couple of hours." (*Id.*)

The following morning before trial, Robertson asked Bache if he wanted to

proceed with trial and Bache responded in the affirmative. (*Id.* at 81–82.) Robertson

informed the Commonwealth that Bache had declined the offer. (*Id.* at 67–68.)

Robertson testified that "once the judge opened the trial up the offer was off the table."

(*Id.* at 81.)

### 3. Circuit Court's Rejection of the Claim

In rejecting Bache's claim, the Circuit Court explained as follows:

Bache's allegation of ineffective assistance of counsel consisted, initially, of a two-pronged attack. The first prong involved the lack of advice on a plea offer made at the close of the first day of the two-day bench trial. The second prong involved the failure to obtain and introduce text messages at trial. The Court granted Respondent's Motion to Strike at the close of Petitioner's evidence regarding the second prong of the attack due to lack of any evidence to support that claim.

## Advice on Plea Offer

Petitioner alleges that his attorney's advice to him regarding the plea offer was inadequate to the point of non-existent, and that Petitioner had no opportunity to accept the offer. Petitioner's evidence was, in essence, that he and his attorney had no discussion at any time about the pros and cons of accepting or rejecting the plea offer and that since he did not choose to accept the offer that his counsel's advice was inadequate.

## Findings of Fact

It is uncontested that Petitioner never requested a plea offer at any time before or during trial. He believed the complaining witness would not appear to testify against him. He was not interested in a plea offer. Counsel, after hearing her testimony, and describing the first day of trial as a "catastrophe", requested a plea offer. The operative term of the potential offer; i.e., ten years to serve, was relayed to Petitioner by counsel at the end of the first day in the holding cell at the courthouse. At that time it is uncontested that attorney and client had no discussion about the pros and cons of the offer and whether or not it would be accepted or rejected. A few hours later, counsel, after confirming it was a valid offer, conferred with Petitioner's family at a restaurant and then, the same day conferred with Petitioner at the jail for a period of one and a half to two hours.

Petitioner testified that the discussion at the jail entailed how the first day of trial went; the DNA evidence, the cell phone messages, the pregnancy tests, condoms found in complaining witness's room; that complaining witness was underage and the step-daughter of Petitioner. Petitioner conceded he knew he was facing a lot of time. Petitioner spoke with his parents about the plea offer after the jail interview. Petitioner testified that the jail interview was only 40 to 45 minutes long and that the plea offer was never discussed.

Counsel's recollection of the jail interview was quite different. He testified it lasted one and a half to two hours and included reviewing the day's evidence, the time petitioner was facing if convicted of all charges; explaining the downside of not taking the plea — many, many years in jail; that counsel had discussed the plea offer with Petitioner's family; that counsel asked Petitioner if he had made a decision on the offer to which

Petitioner replied "I cannot see myself pleading guilty to something I did not do". Counsel stated he went over the evidence again with Petitioner and asked again and Petitioner repeated that he would not plead. They then made preparations for Petitioner to testify the next day.

The following morning Petitioner states counsel never came to speak with him before trial although counsel testified that he did, and that Petitioner confirmed his rejection of the plea offer again at that time.

Petitioner testified that counsel was optimistic about the consent defense and; that he, counsel, was confident of winning; but counsel testified the first day of trial was a "catastrophe", that "it fell apart", that there was not going to be "a good outcome", that things were not going well; that Petitioner's family was not given any indication that the case could be won.

The court finds most of Petitioner's testimony self-serving and unworthy of belief. That there was no discussion of the pros and cons of accepting or rejecting the plea offer at the jail interview is simply incredible given counsel's testimony.

Petitioner wants this Court to believe his attorney never gave him counsel pertaining to the strength of the evidence, the probable trial outcome and the risks of rejecting the plea offer so that he could make an informed decision about accepting or rejecting the plea offer. He alleges that the advice was non-existent not just inadequate.

The Court finds counsel's testimony more believable in all respects including the third discussion of the plea offer on the morning of the second day of trial.

## Conclusions of Law

In order to prevail Petitioner had to show counsel's performance to be deficient and that the deficient performance caused prejudice. The proper standard for attorney performance is that of reasonably effective assistance. There is a presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

Strickland [v]. Washington, 466 U.S. 668 (1984).

The Court finds that counsel's performance was within the wide range of reasonable professional assistance and cannot be deemed unreasonable as he advised Petitioner, in person, over the course of an hour or two at the jail, of the pros and cons of accepting or rejecting the plea offer and Petitioner simply rejected the offer after having had the opportunity to accept it on multiple occasions. Petitioner was informed, but chose poorly. Counsel was not ineffective.

(ECF No. 7–6, at 1–3.) As discussed below, the Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Circuit Court's rejection of this claim. *See* 28 U.S.C. § 2254(d)(1)–(2).

## C. No Unreasonable Application of Law or Determination of Facts

Under § 2254 "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Merzbacher*, 706 F.3d at 364 (alteration in original) (citation omitted) (internal quotation marks omitted). In order "for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear." *Id.* (citation omitted). That is simply not the case here. The Circuit Court heard testimony from both Bache and his counsel and found that Bache's testimony was vague, unsupported, and incredible, and instead credited counsel's more specific and credible testimony.

The United States Court of Appeals for the Sixth Circuit has observed that in general, "[a] criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising" the option to plead guilty or proceed to trial. *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003). Thus, when communicating a plea offer, counsel "should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000) (citations omitted).

"On the other hand, the ultimate decision whether to plead guilty must be made by the defendant." *Id.* (citation omitted). "[A] lawyer must take care not to coerce a client into either accepting or rejecting a plea offer." *Id.* (citing *Jones v. Murray*, 947 F.2d 1106, 1111 (4th Cir. 1991)). In successfully steering a course between inadequate advice and coercing a plea, counsel enjoys a "wide range of reasonableness" and "[t]here are countless ways to provide effective assistance in any given case." *Id.* (citation omitted). Accordingly,

> [c]ounsel rendering advice in this critical area may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea . . . , whether the defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision.

*Id.*

The record establishes that counsel informed Bache of the plea offer from the Commonwealth that capped Bache's active term of imprisonment at ten years, and it is undisputed that Bache understood that an offer of ten years existed. Counsel also explained to Bache that he was facing a much more significant amount of imprisonment if he was convicted of all of the various counts. Bache agreed that he understood he was facing "a lot" of time if he was convicted. (Jan. 29, 2016 Tr. 37.) As the Circuit Court reasonably found, Bache's statements and testimony that counsel failed to explain any aspect of the plea offer to him is incredible in light of counsel's more specific testimony to the contrary.

Moreover, when Bache stated to counsel, "I can not see myself pleading guilty to something that I did not do" (*Id.* at 66), counsel then attempted to flesh out what Bache

believed that he had not done, which was that he "didn't rape her." (*Id.* at 67.) At that juncture, counsel once again explained the elements of rape and the evidence against Bache. (*Id.*) As counsel explained to Bache more than once, counsel had an affirmative duty not to exert undue influence on Bache about accepting the plea. *See Jones*, 947 F.2d at 1111. "[A]t this point and in the context of his client's rejection of the plea offer for the stated reason that he was innocent," counsel reasonably "refrain[ed] from a vigorous attempt to change his client's mind." *Id.* Moreover, Bache was extremely interested in what his family thought that he should do with regard to the plea offer, and he immediately rejected the plea offer when he heard that his family thought he should continue with trial even though counsel strongly advised him that it was his decision alone to make. (Jan. 29, 2016 Tr. 67.) As the Circuit Court reasonably concluded, counsel was not deficient.

Additionally, Bache fails to establish prejudice from any alleged error of counsel. Under the present circumstances, "the prejudice inquiry focuses on 'whether counsel's constitutionally ineffective performance affected the outcome of the plea process.'" *Merritt*, 102 F. App'x at 307 (quoting *Hill*, 474 U.S. at 59). Bache must demonstrate "a reasonable probability" that he would have accepted the plea offer if he "had . . . been afforded effective assistance of counsel." *Frye*, 132 S. Ct. at 1409; *see Merritt*, 102 F. App'x at 307. Bache indicates that he "has demonstrated that he would have accepted the plea offer if counsel had provided complete and candid advice." (§ 2254 Pet. 23.) The Circuit Court reasonably rejected this contention.

As he argued in his state habeas, Bache indicates that the evidence was heavily stacked against Bache, and "overall . . . there was virtually no chance that Bache would be acquitted of all of the charges," but that "Bache did not understand all these factors because counsel failed to explain and discuss them." (*Id.* at 24.) Bache again highlights that "[o]ne of the most compelling reasons to grant relief in this case is that Bache was not advised that even if [the] sex was consensual, Bache was looking at many years in prison based on the five counts of indecent liberties by a parent." (*Id.* at 25 (emphasis omitted).) The Circuit Court reasonably discredited Bache's testimony that counsel failed to explain to him that he was facing significant time. Contrary to Bache's current allegations, counsel explained to Bache that at best, he would try to limit Bache's sentencing exposure if he continued with trial. Counsel testified that, in light of the unavoidable evidence establishing that a sexual relationship between Bache and his step-daughter existed, he adopted a strategy aimed at demonstrating that the relationship was consensual in nature which would limit the number of charges and time Bache was facing. (Jan. 29, 2016 Tr. 53–55.) Counsel testified that the sentence for a "consensual sexual relationship was much less than it would be for forcible sodomy or the other charges he was facing." (*Id.* at 55.) Counsel averred that he dealt with the issue of consent not being a complete legal defense to the indecent liberties charges, by "explain[ing] to [Bache], that *barring some miracle* he was not going to walk away from this case unscathed. But we would put on the best defense that we had available to reduce the number of charges that he was exposed to." (*Id.* (emphasis added).) Bache's

own self-serving testimony that counsel failed to explain his potential sentencing exposure and his odds of acquittal based on the law and facts of the case is incredible.

Bache fails to demonstrate that, but for deficient advice from counsel, he would have accepted the plea offer that was on the table. Counsel's undisputed testimony reflects that at the time the Commonwealth's plea offer remained open, Bache never expressed a willingness to accept his guilt. As the Circuit Court concluded, Bache rejected the plea offer at the time the plea offer was available and counsel cannot be faulted for Bache's counseled—but poor—choice. Reviewing all of the evidence, the Court cannot conclude that the Circuit Court's determination of fact was unreasonable in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(2).

As the Circuit Court's conclusion was neither an unreasonable application of law nor an unreasonable determination of fact, Bache's claim will be dismissed.

### III. CONCLUSION

Bache's claim will be dismissed. The Motion to Dismiss (ECF No. 6) will be granted. The § 2254 Petition will be denied. The action will be dismissed. A certificate of appealability will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/

HENRY E. HUDSON
SENIOR UNITED STATES DISTRICT JUDGE

Date: July 2 2018
Richmond, Virginia